IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

RECEIVED
USDC. CLERK. CHARLESTON. SC

2012 OCT 15 A 11: 02

| | | |
|---|---|---|
| Ronald Jefferson Davis, Jr. | : | |
| Plaintiff, | : | |
| | : | Civil Action No. |
| v. | : | |
| | : | 2:12-CV-2970-RMG-BM |
| Andrew Thomas Taylor, Jr. | : | |
| Naomi Alazraki Taylor, | : | |
| Louis Richard Cohan, | : | |
| Cohan Law Group, LLC and | : | |
| John Doe 1-5, | : | |
| Defendants. | : | |

## COMPLAINT

COME NOW, Ronald Jefferson Davis, Jr., Plaintiff in the above-styled civil action (hereinafter referred to as "Plaintiff"), appearing *Pro Se* and specially for purposes of this **Complaint** against Defendants Andrew Thomas Taylor, Jr., Naomi Alazraki Taylor, Louis Richard Cohan, Cohan Law Group, LLC (a Georgia Limited Liability Company) and John Does 1-5 (hereinafter referred to collectively as "Defendants") respectfully showing as follows:

Page 1

## Parties

1.    Plaintiff is a natural person and a resident of Charleston County, State of South Carolina, and hereby voluntarily submits himself to the jurisdiction and venue of this Court for the purposes of this action.

2.    Andrew Thomas Taylor, Jr. and Naomi Alazraki Taylor (hereinafter collectively, the "Taylors" or "Taylor Defendants"), are residents of the State of Georgia, Fulton County.

3.    Louis Richard Cohan is resident of the State of Georgia, Cobb County (hereinafter referred to as "Cohan").

4.    Cohan Law Group, LLC is a Georgia limited liability company and can be served via its registered agent, Louis Richard Cohan at 3340 Peachtree Road, NE, Suite 580, Atlanta, GA 30326 (hereinafter collectively referred to as "Cohan" or "Cohan Defendants".)

## Jurisdiction and Venue

5.  Jurisdiction and Venue of this Court is invoked pursuant to 28 U.S.C. § 1332, diversity of citizenship and amount in controversy in excess of $75,000.

## Facts

6.     Andrew Thomas Taylor, Jr. is currently and at all times applicable to this matter, an "Accredited Investor" as well as a "Super Accredited Investor" as defined by the U.S. Securities and Exchange Commission and its Regulation D provisions.

7.     Naomi Alazraki Taylor is currently and at all times applicable to this matter, an "Accredited Investor" as well as a "Super Accredited Investor" as defined by the U.S. Securities and Exchange Commission and its Regulation D provisions.

8.     The Taylors have never contracted for professional or any other type of services from Plaintiff individually.

9.     The Taylors have never paid Plaintiff individually for professional or any other type of services.

10.     The Taylors sought the services of business entities to which Plaintiff was affiliated as an owner or employee.

11.     Documentation exists that shows the Taylors each individually contracted with Apogee Wealth Management, LLC for financial and investment services.

12.     Prior to the Taylors engagement of Apogee Wealth Management, LLC to assist them with financial and investment services, the

Taylors individually managed the bulk of their respective investment portfolios.

13.    The Taylors engaged Apogee Wealth Management, LLC for advice, recommendations, and consolidated investment reporting.

14.    Apogee    Wealth    Management, LLC    never    exercised discretionary authority over the Taylors investments.

15.    Apogee    Wealth    Management never executed investment transactions without the prior approval of the Taylors.

16.    The Taylors personally approved each and every bill paid via the Apogee bill payment system.

17.    The Taylors have been married for approximately 30 years.

18.    The Taylors have one daughter together.  Naomi Taylor has two daughters from a prior marriage.

19.    Although the Taylors have been married for approximately 30 years, the Taylors maintain separate individual investment portfolios and do not commingle their investment portfolios.

20.    The Taylors have distinctly separate estate plans with differing dispositive provisions.

21.    The Taylors primary contact for financial and investment services at Apogee Wealth Management, LLC was Peter Maher.

22.    Although Plaintiff attended meetings with the Taylors, the meetings were scheduled and conducted by Peter Maher.

23.    Documentation exists that show Andrew Taylor was not satisfied with the aggressiveness of Peter Maher's investment recommendation and style.  Specifically Andrew Taylor desired MORE aggressive recommendations from Peter Maher.

24.    In an August 20th, 2009 at 9:01PM email from Andrew Taylor to Plaintiff (and cc'd to Naomi Taylor), Andrew Taylor states **"I wanted Peter to be more agressive (sic) with stock purchases"**.

25.    Andrew Taylor generally was frustrated with Naomi Taylor's speed of understanding investment strategies and the requirement that he personally explain investment strategies to her.

26.    The Taylors filed a lawsuit (by and through their counsel Cohan) against, among other defendants, Peter Maher and have settled all claims with Peter Maher with mutual releases.

27.    The Taylors filed a lawsuit (by and through their counsel Cohan) against, among other defendants, Apogee Wealth Management, LLC and have settled all claims with Apogee Wealth Management, LLC with mutual releases.

28.    Documentation exist that the Taylors each received a 76 page document entitled "Investment Memorandum" related to an investment in Apogee GBC 2008, LLC.

29.    Documentation exist that page 2 & 3 of the above referenced "Investment Memorandum" is an "Executive Summary", dated May 21, 2008, entitled "Apogee GBC 2008, LLC".

30.    The aforementioned Executive Summary, which each of the Taylors individually received, has a section entitled "**Bank Lending for Purchase**".  The section further states:  "**Bank lending can be easily and quickly arranged at very favorable terms for investors.  Terms are unsecured, prime rate (5%), interest only, 0.5% origination fee with an annual 0.17% renewal fee.**"

31.    The above referenced lending terms as to security, rate, and fees were more favorable than any other rate the Taylors had for their lending needs as of the date of the Executive Summary, May 21, 2008.

32.    Andrew Taylor has used leverage in his investment portfolio.

33.    Both Naomi Taylor and Andrew Taylor regularly and from time to time requested Plaintiff and Peter Maher to review and shop lending for each of their respective borrowing needs.

34.    A May 21st, 2008 email from Plaintiff to the Taylors, Plaintiff states in part **"How much??  General rule of thumb is you don't want to see more than 5% of net worth in a single security as a MAXIMUM, so between you guys total we are talking about $700k or so."**

35.    $14,000,000 times 5% = $700,000.

36.    Given Plaintiffs comments in his above referenced May 21st, 2008 email, it is implied that the Taylors net worth was approximately $14 million.  Neither Naomi Taylor nor Andrew Taylor questioned or even challenged Plaintiffs assertion and calculation that the Taylors net worth was approximately $14 million as of May 21st, 2008.

37.    On October 13, 2008, the Taylors were provided a personal financial statement representing a total net worth of $13,025,854 as of September 30th, 2008.

38.    On January 29, 2009, the Taylors were provided a personal financial statement representing a total net worth of $11,505,739 as of December 31st, 2008.

39.    On March 31, 2009, the Taylors were provided a personal financial statement representing a total net worth of $11,566,790 as of March 31st, 2009.

40.    On August 20th, 2009, the Taylors were provided a personal financial statement representing a total net worth of $11,805,451 as of August 20th, 2009.

41.    In addition to the net worth of the Taylors noted above, both Naomi Taylor and Andrew Taylor expected to receive substantial month retirement (or pension) distributions in excess of $10,000 per month.

42.    The Taylors and Cohan have stated that the Taylors net worth was approximately $5 million and that a $1 million investment in Apogee GBC 2008, LLC represented 20% of their total net worth.

43.    The Taylors and Cohan were aware that in claiming Plaintiff had recommended to a "retiring" couple with a net worth of $5 million to invest 20% of their total net worth in Apogee GBC 2008, LLC, would be damaging to Plaintiffs professional reputation.

44.    A May 21st, 2008 email from Naomi Taylor to Peter Maher and Andrew Taylor (with cc Plaintiff) states that she wished to personally invest $500,000 in Apogee GBC 2008, LLC.

45.    Naomi Taylor did not have $500,000 cash on hand as of May 21st, 2008.

46.    Naomi Taylor did have more cash on hand than Andrew Taylor as of May 21st, 2008.

47.    A May 23rd, 2008 email from Andrew Taylor to Plaintiff (with cc to Peter Maher and Naomi Taylor) states the he wished to personally invest $500,000 in Apogee GBC 2008, LLC.

48.    Documentation exist that the Taylors thought the investment in Apogee GBC 2008, LLC was "a very good investment".

49.    In Andrew Taylors May 23rd, 2008 email, Andrew Taylor asked **"and how much additional debt to take by borrowing from the bank."**

50.    Andrew Taylor did not have $500,000 cash on hand as of May 23rd, 2008.

51.    In fact, on April 11th, 2008, Andrew Taylor provided Naomi Taylor with a $268,000 Promissory Note for various cash needs of Andrew Taylor.

52.    In fact, on October 13th, 2008, Andrew Taylor provided Naomi Taylor with a $234,000 Promissory Note for various cash needs of Andrew Taylor.

53.    Andrew Taylor on other occasions borrowed cash from Naomi Taylor.

54.    Naomi Taylor benefited from a $5 million unsecured loan from Georgian Bank because it allowed her to invest in Apogee GBC 2008, LLC without coming up with $500,000 of cash on short term notice.

55.    Andrew Taylor benefited from a $5 million unsecured loan from Georgian Bank because it allowed him to invest in Apogee GBC 2008, LLC without coming up with $500,000 of cash on short term notice.

56.    Documentation exist that show the Taylors each individually sought the advice of other parties to prior to deciding to invest in Apogee GBC 2008, LLC.

57.    Documentation exists that shows on May 30th, 2008, Apogee GBC 2008, LLC acquired 186,000 shares of Georgian Bancorporation, Inc. at a price of $27 per share.

58.    The Taylors, by and through their counsel Cohan, have on numerous occasions accused Plaintiff of "marking up" the subject Georgian Bancorporation, Inc. stock from $26 to $27 per share for his own personal gain.

59.    The Taylors and Cohan conspired to make such allegation of "marking up" the subject Georgian Bancorporation, Inc. stock against Plaintiff.

60.    The Taylors and Cohan knew such allegations of "marking up" the subject Georgian Bancorporation, Inc. stock would damage Plaintiff professionally.

61.    The Taylors and Cohan, at the time of the allegations (or immediately thereafter), had sufficient documentation to know that Plaintiff had not "marked up" the subject Georgian Bancorporation, Inc. stock and the actual purchase price was $27 per share.

62.    The Taylors and Cohan continued to conspire and make allegations that Plaintiff had "marked up" the subject Georgian Bancorporation, Inc. stock after they were provided with documentary evidence that the actual purchase price was $27 per share.

63.    The Taylors and Cohan, as of the date of this Complaint, have sufficient documentation to concede the actual purchase price of the subject Georgian Bancorporation, Inc. stock was $27 per share.

64.    Documentation exist that there were 186,000 units of Apogee GBC 2008, LLC.

65.    Documentation exist that one unit of Apogee GBC 2008, LLC corresponds to one share of Georgian Bancorporation, Inc. stock.

66.    Documentation exist that Apogee GBC 2008, LLC was a "single asset" entity.

67.    Andrew Taylor has on multiple occasions invested in "single asset" entities.

68.    A May 30th, 2008 at 1:03PM email from Plaintiff to the Taylors, Plaintiff states **"I may have some documents for you guys to sign .. if possible today … or over the weekend if we are all tied up today. You guys around???"**

69.    A May 30th, 2008 at 1:27PM email from Andrew Taylor (cc'ing Naomi Taylor as well) to Plaintiff, Andrew Taylor states **"Hi, We are around all weekend and next week.  I leave for Wash June 6 and Naomi and I both leave for Europe June 9.  Tip"**

70.    Personal Guarantees for a $5 million unsecured Georgian Bank loan, with a pre-printed date of May 29th, 2008, purport to be signed by Plaintiff, Andrew Taylor and Naomi Taylor.

71.    All three of the subject May 29th, 2008 Personal Guarantees had identical terms and language.

72.    Andrew Taylor admitted in numerous court documents to executing the subject May 29th, 2008 Personal Guarantee.

73.    Naomi Taylor admitted in numerous court documents to executing the subject May 29th, 2008 Personal Guarantee.

74.    Over six months after first admitting to executing the subject May 29th, 2008 Personal Guarantees in court documents, the Taylors and

Cohan began claiming the subject May 29th, 2008 Personal Guarantees were forged.

75.    The Taylors and Cohan conspired to, and in fact did, accuse Plaintiff (or someone at Plaintiffs direction) of forging the subject May 29th, 2008 Personal Guarantees.

76.    The Taylors and Cohan knew such allegations of forgery would damage Plaintiff professionally.

77.    Documentation exists that shows on June 15th, 2008, the Taylors received 37,038 units of Apogee GBC 2008, LLC.

78.    Documentation shows that the 37,038 units of Apogee GBC 2008, LLC received by the Taylors on June 15th, 2008, corresponded to 37,038 shares of Georgian Bancorporation, Inc. stock.

79.    37,038 times $27 = $1,000,026.

80.    Documentation exist that shows as of June 15th, 2008, the Taylors had not transferred payment for any of the 37,038 units of Apogee GBC 2008, LLC units received on that same day.

81.    Documentation exists that shows Andrew Taylors ownership in Apogee GBC 2008, LLC was represented as:

      i. 37,038 units, Cert. #2 Titled Andrew & Naomi Taylor, dated June 15, 2008.  VOIDED December 1, 2008. (37,038 x $27 = $1,000,026).

      ii. 6,019 units, Cert. #3, titled Andrew Taylor, dated Dec. 1, 2008.

      iii. 12,500 units, Cert. #4, titled IRA of Andrew Taylor, dated Dec. 1, 2008.

82.    Documentation exists that shows Andrew Taylors payments are as follows:

      *i. May 29th, 2008 – Original $5 million Georgian Bank Loan*

      ii. June 23, 2008 - $150,000 (wire from Fidelity Investments)

      *iii. August 29th, 2008 – Georgian Bank Loan Renewed*

      iv. October 7, 2008 - $350,000 (wire from Andrew Taylor Fidelity IRA)

83.    Andrew Taylor had not paid for any of his $500,000 Apogee GBC 2008, LLC commitment as of the original $5 million Georgian Bank loan dated May 29, 2008 and associated May 29th, 2008 Personal Guarantees.

84.    Andrew Taylor had not paid for his entire $500,000 Apogee GBC 2008, LLC commitment as of the $5 million Georgian Bank loan

renewal dated August 29th, 2008 and associated August 29th, 2008 Personal Guarantees.

85.    Starting as of the October 31, 2008 monthly statement, through and including the October 31, 2009 monthly statement, Andrew Taylor received Fidelity Investment statements for the above referenced Andrew Taylor IRA which listed 12,500 units of Apogee GBC 2008, LLC.

86.    No documentation prior to October 31, 2009 ever shows questions or confusion from the Taylors as to why investment statements, personal financial statements, personal balance sheets or any other documentation listed an investment in Apogee GBC 2008, LLC as opposed to Georgian Bancorporation, Inc. shares directly.

87.    No documentation exists that would have ever given the Taylors any idea that they were investing in Georgian Bancorporation, Inc. stock directly as opposed to Apogee GBC 2008, LLC.

88.    On June 11, 2008, at 12:17PM, Plaintiff sent each to Andrew Taylor and Naomi Taylor an emailed pdf copy of the May 30th, 2008 Apogee GBC 2008, LLC Operating Agreement and May 30th, 2008 Organizational Documents.    Plaintiff furthermore stated in that email, **"Please let me know if you have any questions."**

89.    The May 30th, 2008 Apogee GBC 2008, LLC Operating Agreement states that Plaintiff was the Managing Member.

90.    Neither Naomi Taylor nor Andrew Taylor (*after printing out the Apogee GBC 2008, LLC Operating Agreement and taking it with them to Europe to read*) asked Plaintiff, Peter Maher, or any other party any questions related to the contents of the Apogee GBC 2008, LLC Operating Agreement or initial Organizational Documents.

91.    The Apogee GBC 2008, LLC Operating Agreement provided Plaintiff, as Managing Member, with broad management authority as it related to the operations of Apogee GBC 2008, LLC and its asset, Georgian Bancorporation, Inc. shares.

92.    Neither Naomi Taylor nor Andrew Taylor (*after printing out the Apogee GBC 2008, LLC Operating Agreement and taking it with them to read while in Europe*) asked Plaintiff, Peter Maher, or any other party any questions about the broad management authority of Plaintiff, as Managing Member, related to Apogee GBC 2008, LLC.

93.    Neither Naomi Taylor nor Andrew Taylor (*after printing out the Apogee GBC 2008, LLC Operating Agreement and taking it with them to read while in Europe*) asked Plaintiff, Peter Maher, or any other party to

place any limits on the broad management authority provided Plaintiff as Managing Member.

94.    Also in the June 11, 2008 email referenced above, Plaintiff stated **"We had to go ahead and close the purchase on May 30[th] (using a loan from the bank in order to close it fast as you know)"**.

95.    Again, neither Naomi Taylor nor Andrew Taylor asked Plaintiff, Peter Maher, or any other party any questions related to the loan comment, or Plaintiffs comment "*__as you know__*" (emphasis added).

96.    The Taylors never asked if the referenced loan was joint liability or was joint and several liability.

97.    The Taylors never asked if the referenced loan was several or was proportionate liability.

98.    The Taylors never asked for disclosure of who else was a party to the referenced $5 million Georgian Bank loan.

99.    The Taylors never asked for disclosure of who else was a member of Apogee GBC 2008, LLC.

100.    The Taylors knew or presumed Plaintiff was a party to the referenced $5 million unsecured Georgian Bank loan.

101.    In reply to the above referenced email dated June 11, 2008, Andrew Taylor replied on June 14th, 2008 at 6:10PM (with cc to Peter

Maher) and stated **"I haven't had a chance to read the LLC info but I did print it out and brought it on the trip."**

102.    Documentation exists that shows Naomi Taylors ownership in Apogee GBC 2008, LLC was represented as:

> i. 37,038 units, Cert. #2 Titled Andrew & Naomi Taylor, dated June 15, 2008.  VOIDED December 1, 2008. (37,038 x $27 = $1,000,026).
>
> ii. 16,733 units, Certificate #5, titled Naomi Taylor, dated Dec. 1, 2008.
>
> iii. 1,786 units, Certificate #6, titled IRA of Naomi Taylor, dated Dec. 1, 2008.

103.    Documentation exists that shows Naomi Taylors payments are as follow

> i. *May 29th, 2008 – Original $5 million Georgian Bank Loan*
>
> ii. June 13, 2008 - $150,000 (wire from Fidelity Investments)
>
> iii. June 23, 2008 - $200,000 (wire from Fidelity Investments)
>
> iv. *August 29th, 2008 – Georgian Bank Loan Renewed*
>
> v. October 15th, 2008 - $100,000 (via personal check(s))

104.    $150,000 plus $200,000 plus $100,000 = $450,000.

105.   Naomi Taylor had not paid for any of her $500,000 Apogee GBC 2008, LLC commitment as of the original $5 million Georgian Bank loan dated May 29, 2008 and associated May 29th, 2008 Personal Guarantees.

106.   Naomi Taylor had not paid for her entire $500,000 Apogee GBC 2008, LLC commitment as of the $5 million Georgian Bank loan renewal dated August 29th, 2008 and associated August 29th, 2008 Personal Guarantees.

107.   In fact, Naomi Taylor has never paid her entire $500,000 Apogee GBC 2008, LLC commitment even though she (and her IRA) received $500,000 of Apogee GBC 2008, LLC membership units.

108.   Documentation exist that the 1,786 units received by "Naomi Taylor – Traditional IRA – Fidelity Management Trust Co – Custodian" was never paid for by the IRA entity.

109.   Documentation exist that Plaintiff instructed Peter Maher not to withdraw the remaining $50,000 Naomi Taylor commitment for the Apogee GBC 2008, LLC units transferred to the Naomi Taylor IRA due to the Plaintiffs new perception (*given the rapidly escalating global financial crisis*) of the risk associated with the underlying Georgian Bank stock and Plaintiffs desire to mitigate Naomi Taylors potential loses.

110.   In an August 20th, 2009 email from Andrew Taylor to Plaintiff (cc'ing Naomi Taylor), Andrew Taylor states **"Unfortunately, the opportunity to invest in Georgian Bank came just after I had the $950,000 settlement with Reinke and it presented the opportunity to get rich quick and pay off that debt"**.   Andrew Taylor further states in reference to Plaintiff:  **"You aren't responsible for my desire to get rich quick."**

111.   In that same August 20th, 2009 email from Andrew Taylor to Plaintiff (cc'ing Naomi Taylor), Andrew Taylor states **"We are very relieved to hear that the total debt is only 5 million."**   Such does not demonstrate the level of concern and emotional distress alleged by the Taylors and Cohan in later court filings.

112.   On September 23rd, 2009, Andrew Taylor received a Federal Express package containing what is commonly referred to as a 10 Day Demand Letter (*dated 9/22/09*) from Morris, Manning & Martin, LLP, as counsel for Georgian Bank.  The package contained copies Andrew Taylor's and Naomi Taylor's May 29th, 2008 Personal Guarantees, and Andrew Taylor's and Naomi Taylor's August 29th, 2008 Personal Guarantees. Andrew Taylor and Cohan now claim all FOUR of these Personal Guarantees were forged.

113.   On September 23rd, 2009, Naomi Taylor received a Federal Express package containing what is commonly referred to as a 10 Day Demand Letter (*dated 9/22/09*) from Morris, Manning & Martin, LLP, as counsel for Georgian Bank.  The package contained copies Andrew Taylor's and Naomi Taylor's May 29th, 2008 Personal Guarantees, and Andrew Taylor's and Naomi Taylor's August 29th, 2008 Personal Guarantees. Naomi Taylor and Cohan now claim all FOUR of these Personal Guarantees were forged.

114.   On September 25th, 2009, the Federal Deposit Insurance Corporation seized and closed Georgian Bank

115.   With the closure of Georgian Bank by the FDIC, the Georgian Bancorporation, Inc. stock became worthless.  In fact, on September 29th, 2009, Georgian Bancorporation, Inc. filed a Chapter 7 Voluntary Petition in the U.S. Bankruptcy Court, Northern District of Georgia (CAFN: 09-85446-mgd)

116.   In an email dated Saturday, September 26th, 2009 at 7:45AM, (*the day after Georgian Bank was closed by the FDIC*), Andrew Taylor wrote **"Louis [Cohan] said the FDIC sometimes would settle for 10 to 20 cents on the dollar."**  Such does not demonstrate the level of concern and emotional distress alleged by the Taylors and Cohan in later court filings.

Page 21

117.    Cohan in fact told the Taylors that the FDIC would settle its claim against the Taylors for 10 to 20 cents on the dollar.

118.    On October 15th, 2009, the Fulton County Georgia Superior Court case captioned *First Citizens Bank and Trust Company, Inc. v. 1842 Capital, LLC, R. Jefferson Davis, Jr., Andrew Taylor, Naomi Taylor, et al*. (CAFN: 2009CV176438) was filed.

119.    On October 19th, 2009, in response to the *First Citizens v. 1842* case, the Taylors, by and through Cohan, filed the Fulton County Georgia Superior Court case captioned *Andrew T. Taylor and Naomi P. Taylor v. R. Jefferson Davis, Jr. et al*. (CFAN: 2009CV176573) in an obvious attempt to force Plaintiff to immediately have the Taylors dismissed from the *First Citizens v. 1842* case.

120.    Andrew Taylor admitted to signing the May 29th, 2008 and August 29th, 2008 Personal Guarantees in the Taylors October 19th, 2009 *Taylor v. Davis* complaint.

121.    Naomi Taylor admitted to signing the May 29th, 2008 and August 29th, 2008 Personal Guarantees in the Taylors October 19th, 2009 *Taylor v. Davis* complaint.

122.    Cohan and the Taylors sought through their October 19th, 2009 *Taylor v. Davis* litigation against Plaintiff, to place Plaintiffs business

Page 22

interest under Cohan and the Taylors control with the filing of an emergency motion by Cohan.  At the hearing, Cohan's emergency motion was denied.

123.    Cohan, Andrew Taylor and Naomi Taylor conspired to defame Plaintiff in an effort to force Plaintiff to immediately have the Taylors dismissed from the *First Citizens v. 1842* case.

124.    On October 21st, 2009, Cohan acknowledged service a Fulton County Georgia Superior Court complaint for the case *First Citizens v. 1842*. The subject complaint contained copies of all four of the Personal Guarantees that the Taylors and Cohan now claim to be forged.

125.    On or about October 21st, 2009, Cohan provided Andrew Taylor with a copy of the complaint in the *First Citizens v. 1842* action, including copies of the four Personal Guarantees which the Taylors and Cohan now claim are forged.

126.    On or about October 21st, 2009, Cohan provided Naomi Taylor with a copy of the complaint in the *First Citizens v 1842* action, including copies of the four Personal Guarantees which the Taylors and Cohan now claim are forged.

127.    On November 18th, 2009, Andrew Taylor admitted to signing the May 29th, 2008 and August 29th, 2008 Personal Guarantees in the Taylors Answer to the *First Citizens v. 1842* complaint.

128.    On November 18th, 2009, Naomi Taylor admitted to signing the May 29th, 2008 and August 29th, 2008 Personal Guarantees in the Taylors Answer to the *Fist Citizens v. 1842* complaint.

129.    Andrew Taylor regularly uses a felt tip pen.

130.    Andrew Taylor always used a felt tip pen when he met with Plaintiff and Peter Maher at the Apogee offices.

131.    Documentation exist that Cohan claimed to first suspected forgery of the subject Personal Guarantees because at least one such Personal Guarantee was signed with a felt tip pen.

132.    Cohan, at the time he initially made his forgery assertions, was unaware that Andrew Taylor made a habit of using a felt tip pen.

133.    Neither the Taylors nor Cohan have personally ever seen Plaintiff use a felt tip pen.

134.    Neither the Taylors nor Cohan know of anyone claiming that Plaintiff has used a felt tip pen.

135.    Neither the Taylors nor Cohan have any proof Plaintiff personally forged the Taylors Personal Guarantees or directed anyone to forge the Taylors Personal Guarantees.

136.   Neither the Taylors nor Cohan are aware of any actual evidence that Plaintiff forged the Taylors Personal Guarantees or directed anyone to forge the Taylors Personal Guarantees.

137.   Cohan and the Taylors have in fact accused and speculated as to numerous persons (*other than Plaintiff*) that could have forged the subject personal guarantees.

138.   The U.S. District Court, Northern District of Georgia in the *First Citizens v. 1842* litigation (now entitled *FDIC-R v. 1842 Capital, LLC et al.*, CAFN: 1:10-cv-2621-WSD) has opined that the allegations of forgery by the Taylors and Cohan are "suspect".

139.   The Taylors own handwriting experts report states that "'no conclusion' can be rendered as to authorship" of Andrew Taylor's signature.

140.   The Taylors handwriting experts report continues by stating that "No conclusion may be defined as – *'This is the zero point on the confidence scale. It is used when ...the examiner does not have a leaning one way or another.'*"

141.   The Taylors handwriting expert did state that Naomi Taylors signature was forged.

142.   The Taylors own handwriting expert has stated that the analysis of handwriting samples is an inexact science and thus subject to error and incorrect interpretation

143.   Cohan continued to represent both Andrew Taylor and Naomi Taylor even after the Taylors handwriting experts report concluded that Naomi Taylors signature was forged and rendered a "no conclusion" as to authorship of Andrew Taylor's signatures.

144.   Such continued legal representation by attorney Cohan individually was a professional conflict.

145.   Cohan did not obtain the written conflict waiver as required by Georgia Bar rules.

146.   Cohan continued to represent both Andrew Taylor and Naomi Taylor because they were all co-conspirators.

147.   Cohan, Andrew Taylor and Naomi Taylor upon information and belief conspired to accuse Plaintiff of forging the subject May 29th, 2008 Personal Guarantees and August 29th, 2008 Personal Guarantees.

148.   Andrew Taylor had the means, motive and opportunity to forge Naomi Taylor's signature on the subject Personal Guarantees.

149.   Andrew Taylor has in the past signed documents for Naomi Taylor.

150.  Andrew Taylor has in the past endorsed checks for Naomi Taylor.

151.  Upon information and belief, Cohan has in the past signed documents for his spouse and/or other family members.

152.  Upon information and belief, Cohan has in the past endorsed checks for his spouse and/or other family members.

153.  Cohan and the Taylors accused Plaintiff of running a tax scheme because of Plaintiffs status as the sole trustee of an Internal Revenue Service 501(c)(3) charity, which was also audited by an outside 3rd party Certified Public Account firm, and further regulated by the State of Georgia Department of Education.

154.  Cohan and the Taylors had no basis for such allegations of tax scheme.

155.  Cohan and the Taylors knew that accusing Plaintiff of running a tax scheme would damage Plaintiff professionally.

156.  Cohan and Cohan Law Group, LLC have defamed Plaintiff by posting statements about Plaintiff on the Cohan Law Group, LLC website.

157.  Cohan told Plaintiff and Plaintiffs prior legal counsel that Cohan and the Taylors intent in suing Plaintiff was to get one of Plaintiffs business partners or co-defendants to "rat out" Plaintiff.

158.    Cohan and the Taylors conspired to destroy Plaintiffs business interest and relationships by suing Plaintiffs law firm partner, CPA firm partner, and other business partners individually as well as their professional entities.

159.    Cohan and the Taylors were well aware that the other defendants Cohan and the Taylors sued were unassociated to any legal action.

## Count I
### (Defamation, Slander and Liable Per Se)

160.    Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

161.    The Taylors, individually and acting through Cohan and other representatives, and Cohan individually, made false and defamatory statements concerning Plaintiff and published those statements to third parties.

162.    The Taylors and Cohan acted with malice, either with knowledge that the statements were false, or with reckless disregard as to the truth or falsity of the statements.

163. The Taylors and Cohan's publication of false and defamatory statements have caused, are causing, and will continue to cause Plaintiff to suffer injury to his professional standing, business, trade, reputation and good name.

## Count II
### (Conspiracy to Commit Defamation, Slander and Liable Per Se)

164. Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

165. In order to perpetrate the Defamation, Slander and Liable Per Se above, each of the Taylors individually and Cohan, upon information and belief, each conspired and acted in concert, knowingly made false and defamatory statements concerning Plaintiff and published those statements to third parties

166. Each of the Taylors individually and in concert with Cohan, upon information and belief, contributed to this conspiracy, with each of the Taylors individually and Cohan playing a critical role in the wrongful acts.

167. Each of the Taylors individually and in concert with Cohan, upon information and belief, committed these acts of conspiracy with malice, either with knowledge that the statements were false, or with reckless disregard as to the truth or falsity of the statements.

168.  This conspiracy between each of the Taylors individually and Cohan have caused, are causing, and will continue to cause Plaintiff to suffer injury to his professional standing, business, trade, reputation and good name.

## Count III
## (Defamation, Slander and Liable Per Quod)

169.  Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

170.  The Taylors, individually and acting through Cohan and other representatives, and Cohan individually, made false and defamatory statements concerning Plaintiff and published those statements to third parties.

171.  The Taylors and Cohan acted with malice, either with knowledge that the statements were false, or with reckless disregard as to the truth or falsity of the statements.

172.  The Taylors and Cohan's publication of false and defamatory statements have caused, are causing, and will continue to cause Plaintiff to suffer injury to his professional standing, business, trade, reputation and good name.

173.    Plaintiff has suffered harm as a direct and proximate result of the Taylors and Cohan's publication of the false and defamatory statements, including but not limited to loss of actual and expected income, incurring administrative, legal and other expenses to mitigate the damages caused by the Taylors and Cohan, and loss of clients and business partners trust and goodwill.

## Count IV
### (Conspiracy to Commit Defamation, Slander and Liable Per Quod)

174.    Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

175.    In order to perpetrate the Defamation, Slander and Liable Per Quod above, each of the Taylors individually and Cohan, upon information and belief, each conspired and acted in concert, knowingly made false and defamatory statements concerning Plaintiff and published those statements to third parties.

176.    Each of the Taylors individually and in concert with Cohan, upon information and belief, contributed to this conspiracy, with each of the Taylors individually and Cohan playing a critical role in the wrongful acts.

177.    Each of the Taylors individually and in concert with Cohan, upon information and belief, committed these acts of conspiracy with

malice, either with knowledge that the statements were false, or with reckless disregard as to the truth or falsity of the statements.

178. This conspiracy between each of the Taylors individually and Cohan have caused, are causing, and will continue to cause Plaintiff to suffer injury to his professional standing, business, trade, reputation and good name.

179. The conspiracy between each of the Taylors individually and Cohan have caused Plaintiff to suffer harm as a direct and proximate result of the Taylors and Cohan's publication of the false and defamatory statements, including but not limited to loss of actual and expected income, incurring administrative, legal and other expenses to mitigate the damages caused by the Taylors and Cohan, and loss of client and business partners trust and goodwill.

## Count V
### (Tortious Interference With Economic Advantage)

180. Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

181. Plaintiff, individually and by and through his ownership interest in various entities, had valid professional and business relationships with his

clients, associated business partners and operations, and had a reasonable expectancy of fees from those relationships.

182. At all times relevant herein, the Taylors and Cohan knew of the relationships between Plaintiff and his clients, associated business partners and operations, and Plaintiffs reasonable expectancy of fees from those relationships.

183. At all times relevant herein, the Taylors and Cohan knew of the significant economic value Plaintiffs business interest had and Plaintiffs reasonable expectancy of economic capital value and future growth and realization of capital value from those business interests.

184. The Taylors and Cohan intentionally interfered with the relationship between Plaintiff and his clients, associated business partners and operations, with the intent and effect of causing a termination of those relationships with Plaintiff or in an attempt to force Plaintiff to resign from certain relationships pending the outcome of litigation.

185. As direct and proximate result of the Taylors and Cohan's intentional interference with the relationships between Plaintiff and his clients, associated business partners and operations, Plaintiff has suffered and continues to suffer substantial injuries and damages.

186.   The Taylors and Cohan have been unjustly enriched as a consequence of these wrongful conduct.

## Count VI
## (Unjust Enrichment)

187.   Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

188.   The Taylors have been unjustly enriched by taking money from Plaintiffs and other litigants insurance carrier.

189.   The Taylors have been unjustly enriched by being relieved of certain liabilities by perpetrating wrongs on Plaintiff.

190.   Cohan has been unjustly enriched by taking fees and money from the Taylors and other parties under whatever fee structure Cohan may have entered.

191.   As a result of said unjust enrichment, Plaintiff has suffered damage and continues to suffer damage.

192.   By acting in the manner alleged herein, the Taylors and Cohan have been unjustly enriched.

## Count VII
### (Abuse of Process)

193.   Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

194.   Upon information and belief, the Taylors, by and through Cohan and other representatives, filed litigation in the Superior Court of Fulton County Georgia against Plaintiff and others (*Taylors v. Apogee Family Office, LLC, et al*., Civil File Action No. 2009CV176573) to seek custody of Plaintiffs business operations, harass and threaten Plaintiff (and others) seek favorable advantage and deposition testimony in the *First Citizens v. 1842* action, and extort funds from a Plaintiffs insurance carrier.

195.   Upon information and belief, the Taylors, by and through Cohan and other representatives, re-filed and expanded their litigation on April 12th, 2010 (serving Plaintiff in dramatic fashion at his deposition in the *First Citizens v. 1842* action) in the Superior Court of Cobb County Georgia against Plaintiff and others (*Taylors v. Apogee Family Office, LLC, et al*., Civil File Action No. 10-1-03374-51) to harass and threaten Plaintiff (and others), seek favorable advantage and deposition testimony in the *First Citizens v. 1842* action, and extort funds from a Plaintiffs insurance carrier.

196.   The Taylors, by and through Cohan and other representatives, re-filed and expanded their litigation in the Superior Court of Cobb County only after learning that Plaintiff asserted his right to decline to answer deposition questions related to the *First Citizens v. 1842* action.

197.   The Taylors, by and through Cohan and other representatives, re-filed and expanded their ligation in a separate jurisdiction (Cobb County as opposed to Fulton County) in an attempt to forum shop and avoid prior admissions in litigation in the Superior Court of Fulton County Georgia.

198.   The Taylors, by and through Cohan and other representatives, filed their litigation in Fulton County and then again in Cobb County to improperly expand the underlying litigation in the *First Citizens v. 1842* action, to defame and interfere with Plaintiff's business interest, and bankrupt Plaintiff via excessive fees and expenses.

199.   The Taylors, by and through Cohan and other representatives, have admitted that the underlying facts and issues for litigation are the same in the *First Citizens v 1842* action as they are in the Taylors litigation in Fulton County and Cobb County.

200.   The Taylors, by and through Cohan and other representatives, filed their litigation in Fulton County and then again in Cobb County

improperly as such claims were compulsory counterclaims or other required claims in the _First Citizens v. 1842_ action.

201.   As a result of the Taylors and Cohan have abused the legal process and court system in Fulton County, Cobb County, the U.S. District Court and again in the U.S. Bankruptcy Court causing damage to Plaintiff and unnecessary burden and expense to the various courts.

## Count VIII
### (Intentional Violation and Commission of Common Law Torts)

202.   Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

203.   The Taylors and Cohan intentionally perpetrated torts against Plaintiff and aided and abetted each other in such wrongful acts.

204.   Although suffering no financial or economic harm, the Taylors and Cohan have maliciously pursued Plaintiff in the various courts causing Plaintiff substantial emotional distress and economic harm.

205.   Such wrongful acts perpetrated by the Taylors and Cohan inflicted great and irreparable harm upon Plaintiff.

## Count IX
### (Conspiracy to Commit Common Law Torts & Conspiracy in Tort)

206.   Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

207.   In order to perpetrate the Intentional Violation of Common Law Torts and Conspiracy in General above, each of the Taylors individually and Cohan, upon information and belief, each conspired and acted in concert, knowingly committed such torts against concerning Plaintiff.

208.   Each of the Taylors individually and in concert with Cohan, upon information and belief, contributed to this conspiracy, with each of the Taylors individually and Cohan playing a critical role in the wrongful acts.

209.   Each of the Taylors individually and in concert with Cohan, upon information and belief, committed these acts of conspiracy with malice.

210.   This conspiracy between each of the Taylors individually and Cohan have caused, are causing, and will continue to cause Plaintiff to suffer tortious and other injury.

211.   The conspiracy between each of the Taylors individually and Cohan have caused Plaintiff to suffer harm as a direct and proximate result of the Taylors and Cohan's wrongful and tortious acts and activities,

including but not limited to loss of actual and expected income, incurring administrative, legal and other expenses to mitigate the damages caused by the Taylors and Cohan.

## Count X
### (False Reporting to Court)

212.   Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

213.   The Taylors and Cohan in the various courts, upon belief and information, knowingly and willfully reported inaccurate and false information to the various courts for the direct purpose of enriching themselves while causing great and irreparable harm to the Plaintiff.

214.   Such wrongful acts perpetrated by the Taylors and Cohan inflicted great and irreparable harm upon Plaintiff.

## Count XI
### (Invasion of Privacy)

215.   Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

216.   The Taylors, individually and through and by Cohan, and Cohan individually, engaged in wrongful acts that constitute an unwarranted invasion and trespass upon Plaintiffs privacy.

217.  Such wrongful acts perpetrated by the Taylors and Cohan inflicted great and irreparable harm upon Plaintiff.

## Count XII
### (Intentional Infliction of Emotional Distress)

218.  Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

219.  The Taylors and Cohan engaged in wrongful acts that constitute an intentional infliction of emotional distress Plaintiff.

220.  Such wrongful acts perpetrated by the Taylors and Cohan inflicted great emotional distress upon Plaintiff.

## Count XIII
### (Fees, Expenses & Lost Wages / Opportunity Costs)

221.  Plaintiff hereby repleads and incorporates by reference each and every allegation set forth above.

222.  The Taylors, Cohan, and others pursuing litigation against Plaintiff with no basis for the allegations of all claims, and particularly the allegations forgery and fraud, is liable, to Plaintiff for attorney's fees, lost wages, lost opportunity wages, and other damages as the Taylors and Cohan have acted in bad faith, have been stubbornly litigious and have caused

Plaintiff unnecessary trouble and expense to Plaintiff pursuant to applicable laws and statutes.

## ADDITIONAL COUNTS

223.  Plaintiff presently has insufficient knowledge and information upon which to form a belief as to whether he may have additional counterclaims.  Plaintiff therefore reserves the right to assert additional counterclaims in the event that discovery or investigation indicates such counterclaims are appropriate.

## Jury Trial

Plaintiff hereby requests a jury trial for all issues triable by jury.

## Prayer for Relief

**WHEREFORE,** Plaintiff prays:

(a) That trial by a jury be had on all counts triable;

(b) That this Court render judgment in favor of Plaintiff and against Defendants;

(c) That this Court award Plaintiff actual and punitive damages in an amount of **$25,000,000** or other amount to be determined by the enlightened conscious of an impartial jury;

(d) That this Court tax all costs against Defendants;

(e) That this Court award Plaintiff his attorney's fees, and litigation expenses and disbursements;

(f) That this court award Plaintiff his lost wages, revenue, opportunity costs and like damages due to his functioning as a *Pro Se* litigant; and

(g) That this Court enters such other and further relief in favor of Plaintiff as it deems just and proper under the circumstances.

Respectfully submitted this 15th day of October 2012.

Ronald Jefferson Davis, Jr.
Plaintiff, *Pro Se*

1985 Riviera Dr. 103-126
Mt. Pleasant, SC 29464
843-608-1065
rjdavisjr@gmail.com